IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| TRAVIS LAMONT DAVENPORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VICTORIA NUSSBAUMER, LINDA BIGGS, SGT. WESSON, CORPORAL GILLIAM, DENNIS PILLMON, OFFICER JONES, SHERIFF OF BERTIE COUNTY, SHERIFF OF MARTIN COUNTY, and CRAIG FRIEDMAN, | ) ) ) ) ) ) ) ) | No. 5:17-CT-3015-FL |
| Defendants.[1] | ) | |

| | | |
|---|---|---|
| TRAVIS LAMONT DAVENPORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 5:17-CT-3016-FL |
| SHERIFF OF BERTIE COUNTY, SHERIFF OF MARTIN COUNTY, and CRAIG FRIEDMAN, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

# **ORDER**

This matter is before the court on defendants' motions for summary judgment (DE 69, 75, 79) pursuant to Federal Rule of Civil Procedure 56. The motions by defendants Victoria

---

[1] The court has constructively amended the case caption to reflect the correct spelling of defendants Nussbaumer, Biggs and Pillmon's names, and will direct the clerk to so amend the docket.

Nussbaumer ("Nussbaumer"), Linda Biggs ("Biggs"), Sgt. Wesson ("Wesson"), Corporal Gilliam ("Gilliam"), Dennis Pillmon ("Pillmon"), Officer Jones ("Jones") and Craig Friedman ("Friedman") were fully briefed. Plaintiff did not respond to defendants Sheriff of Bertie County and Sheriff of Martin County's motion. In this posture, the issues raised are ripe for decision.

## STATEMENT OF THE CASE

Plaintiff, a former state pretrial detainee proceeding pro se, commenced this action by filing complaint on January 19, 2017, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants violated his right to privacy under the Fourteenth Amendment to the United States Constitution by disclosing private health information from his medical records. As relief, plaintiff seeks monetary relief and an injunction directing the Bertie-Martin Regional Jail to change its policies permitting correction officer involvement in detainee medical care.

On October 25, 2017, the court entered order consolidating this action with Davenport v. Sheriff of Bertie County et al., No. 5:17-CT-3016-FL (E.D.N.C.), a similar action plaintiff filed in this court against defendants Sheriff of Bertie County, Sheriff of Martin County, and Friedman.

On January 17, 2018, the court conducted its frivolity review of the complaint and allowed the action to proceed. On January 31, 2018, plaintiff filed motion to appoint counsel, which the court denied that same day. On March 7 and 26, 2018, plaintiff filed motions to amend complaint. The court denied the motions to amend by order entered May 17, 2018.

On September 21, 2018, the court entered case management order governing discovery and pretrial motions practice. The parties completed discovery on or about January 21, 2019.

On February 21, 2019, defendants filed the instant motions for summary judgment. In their motion, defendants Biggs and Nussbaumer rely upon a statement of material facts, and the following: 1) affidavit of Biggs; 2) affidavit of Nussbaumer; and 3) plaintiff's medical records. In their motion, defendants Friedman, Gilliam, Jones, Pillmon, and Wesson (together, "officer defendants") rely upon a statement of material facts, and the following: 1) declaration of Terrence Whitehurst ("Whitehurst"), jail administrator of the Bertie-Martin Regional Jail; and 2) declarations of defendants Wesson, Gilliam, Pillmon, Jones, and Friedman. In their motion, defendants Sheriff of Bertie County and Sheriff of Martin County's (together, "Sheriff defendants") rely upon a statement of material facts, and the following: 1) declaration of John Holley ("Holley"), the Sheriff of Bertie County; 2) declaration of Tim Manning ("Manning"), the Sheriff of Martin County; and 3) copies of North Carolina Session Laws.

Plaintiff responded in opposition to defendants Nussbaumer and Biggs's motion on April 3, 2019, relying upon an opposing statement of material facts, plaintiff's affidavit, and a document concerning legal resources available in North Carolina prisons. Plaintiff also submitted pages marked exhibits two through six, but did not file corresponding exhibits. Also on April 3, 2019, plaintiff responded in opposition to the officer defendants' motion, relying upon an opposing statement of material facts, plaintiff's declaration, and the same legal resources document filed in opposition to defendants Nussbaumer and Biggs's motion. Plaintiff also submitted a page marked exhibit two but did not provide a corresponding exhibit. As noted, plaintiff did not respond to the Sheriff defendants' motion for summary judgment.

On April 17, 2019, defendants Biggs and Nussbaumer filed reply in further support of their motion for summary judgment. On May 1, 2019, the officer defendants filed reply in further support

3

of their motion for summary judgment.

## STATEMENT OF THE FACTS

As defendants move for summary judgment, the court recounts the facts in the light most favorable to plaintiff. On January 25, 2016, plaintiff was arrested on state criminal charges and placed in the Bertie-Martin Regional Jail in Windsor, North Carolina, for pretrial detention. (Pl.'s Aff. (DE 88-1) ¶ 2; Nussbaumer Aff. (DE 72-2) ¶ 4). Defendants Nussbaumer and Biggs were licensed nurses employed by Southern Health Partners during the relevant time period, and they provided contract healthcare services to detainees at the Bertie-Martin Regional Jail. (Nussbaumer Aff. (DE 72-2) ¶ 2; Biggs Aff. (DE 72-1) ¶ 2). Defendants Gilliam, Jones, Pillmon, and Wesson were detention officers employed at the Bertie-Martin Regional Jail during the relevant time period. (Gilliam Decl. (DE 77-3) ¶ 2; Jones Decl. (DE 77-5) ¶ 2; Pillmon (DE 77-4) ¶ 2; Wesson Decl. (DE 77-2) ¶ 2). Defendant Friedman was the Bertie-Martin Regional Jail administrator. (Friedman Decl. (DE 77-6) ¶ 2).

Defendant Nussbaumer performed a physical on plaintiff shortly after he arrived at the jail. (Pl.'s Aff. (DE 88-1) ¶ 3). During that physical, plaintiff informed defendant Nussbaumer that he was HIV positive and that he was then experiencing intestinal distress and diarrhea. (Id.). Defendant Nussbaumer did not initially provide plaintiff with medication for the diarrhea, despite his numerous complaints. (Id. ¶¶ 3-8).

On March 18, 2016, plaintiff complained to detention officers and others about his diarrhea. (See id. ¶ 10). The officers informed defendant Nussbaumer that they would contact the on-call nurse if plaintiff continued complaining about loose stools over the weekend. (Nussbaumer Aff. (DE 72-2) ¶ 9). In response, defendant Nussbaumer instructed the officers not to contact the on-call

4

nurse if the only issue plaintiff reported was loose stools. (Id.). Instead, in an effort to document the complaints, defendant Nussbaumer placed a sign-off sheet on plaintiff's cell door, which stated in bright red handwriting, "please document any reports of loose bowel movements." (Id.; Pl.'s Aff. (DE 88-1) ¶ 10).

Defendant Nussbaumer did not inform plaintiff she had placed the sign-off sheet on his cell door. (Pl.'s Aff. (DE 88-1) ¶ 11). The sign-off sheet was publicly accessible, and plaintiff noticed other inmates pointing in his cell door and laughing at him. (Id.). Plaintiff further reports that "as a result of the posting of my personal medical information on my cell door I was mocked, taunted, teased, and humiliated for my sickness by random inmates." (Id. ¶ 15). On March 20, 2018, another inmate agreed to remove the sign-off sheet from the door. (Id. ¶ 14).

Approximately two months later, on May 28, 2016, plaintiff became "distraught with anxiety and depression from inmates randomly coming by my cell still taunting and teasing me well after I had the medical sheet removed" and in response to one inmate taunting him, he "jump[ed] up to verbally confront the inmate and slip[ped] and fell hitting my head on the floor and hurting my right shoulder." (Id. ¶ 16). Plaintiff was sent to the emergency room as a result of this incident, where he received treatment for his injuries. (Pl's Decl. (DE 91-1) ¶¶ 23-24). The injury to plaintiff's shoulder caused mild arthritis between his clavicle and shoulder joint. (Id. ¶ 27).

On June 24, 2016, plaintiff returned to the jail after he had been sent to a different facility for his medical issues. (Pl.'s Aff. (DE 88-1) ¶ 18). When he arrived, defendant Jones informed plaintiff that he must complete a medical screening questionnaire. (Pl.'s Decl. (DE 91-1) ¶ 5; Jones Decl. (DE 77-5) ¶¶ 4-5). The screening form requested information about plaintiff's HIV status. (Pl.'s Decl. (DE 91-1) ¶ 5). Plaintiff initially refused to answer the questions on the form, but

5

defendant Jones informed plaintiff that he would not be seen by medical staff if he refused to complete the questionnaire. (Id. ¶ 6). Defendant Wesson was also present during the encounter, and he agreed with defendant Jones that plaintiff must answer the questions on the form in order to be seen by medical staff. (Id. ¶ 7). Defendant Wesson contacted defendant Biggs, who also confirmed that plaintiff must complete the form. (Id. ¶¶ 7-8). Because plaintiff needed medical attention, he agreed to complete the form, and thereby disclosed his HIV-positive status to defendants Jones and Wesson. (Id. ¶ 9).

Upon learning that plaintiff was HIV-positive, defendants Wesson and Jones began treating plaintiff differently. (Id. ¶ 10). For example, defendant Jones stated plaintiff was "contagious" during the June 24, 2016, incident. (Id.). Plaintiff subsequently asked defendant Wesson to assist him with a telephone call to his family, and defendant Wesson responded "ain't nobody coming to see you" in a malicious tone. (Id.). Plaintiff also generally alleges defendants Jones and Wesson "mocked, bullied, defamed, and humiliated" him. (Id.).

On June 29, 2016, plaintiff did not receive his double portion meal tray, which was required by his medical orders. (Id. ¶ 11). Plaintiff asked defendant Wesson for his double portion. (Id.). Defendant Wesson approached defendants Gilliam, Pillmon, and Jones and said "in the most sarcastic way" that plaintiff wanted another meal tray. (Id. ¶¶ 12-13). Plaintiff admits he was given his additional food tray approximately 10 or 15 minutes later, but alleges he was "mocked and humiliated" because of his disease during this incident. (Id. ¶ 14).

Also on June 29, 2016, defendant Gilliam was passing out medications, and when he arrived at plaintiff's cell he stated "take this medication before you kick over." (Id. ¶ 16). After providing the medication, defendant Gilliam stated, "with your sick [expletive]." (Id. ¶ 17).

6

Later that same day, plaintiff was scheduled to see defendant Biggs for a medical appointment. (Id. ¶ 18). Defendants Jones and Pillmon escorted plaintiff to the appointment. (Id.). Plaintiff asked if he could speak with defendant Biggs privately, but defendants Pillmon and Biggs stated policy required two detention officers to be present during the appointment. (Id. ¶¶ 19-20). Plaintiff therefore "refused" the appointment and returned to his cell. (Id. ¶ 21).

Finally, plaintiff sent correspondence and formal grievances to defendant Friedman, the jail administrator, concerning the above incidents but they were not resolved to plaintiff's satisfaction. (See id. ¶ 28).

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the

non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

    1. Officer Defendants' Motion

The officer defendants argue they are entitled to qualified immunity to the extent plaintiff seeks monetary damages against them in their individual capacities. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

8

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court may proceed directly to the clearly established prong without first resolving whether the plaintiff has established a constitutional violation. Id.

In determining whether the right at issue was clearly established, the court must define "the right allegedly violated . . . at the appropriate level of specificity." Wilson v. Layne, 526 U.S. 603, 615 (1999). This does not mean that "the exact conduct at issue [must] have been held unlawful for the law governing an officer's actions to be clearly established." Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001). Rather, the court's analysis must take into consideration "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." Id. at 362–63 (internal quotation marks omitted). The right allegedly abridged is "clearly established" for qualified immunity purposes if

> [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted); see also Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537–39 (4th Cir. 2017).

Here, the court exercises its discretion to address the clearly established prong first. See Pearson, 555 U.S. at 236. Plaintiff's claim is that defendants violated his privacy rights by disclosing his private medical information to each other and the other pretrial detainees. Neither the

9

United States Supreme Court nor the United States Court of Appeals for the Fourth Circuit have recognized that pretrial detainees have a constitutional right to the privacy of their medical information. See NASA v. Nelson, 562 U.S. 134, 144-47 & n.9 (2011) (assuming without deciding that Constitution guarantees a "right to information privacy" and noting circuit courts of appeals are split on the issue); Edwards v. City of Goldsboro, 178 F.3d 231, 252 (4th Cir. 1999) ("[T]here is no general constitutional right to privacy; rather, the 'right to privacy' has been limited to matters of reproduction, contraception, abortion, and marriage . . . .") Condon v. Reno, 155 F.3d 453, 465 n.8 (4th Cir. 1998) (noting Fourth Circuit had previously "found that a prisoner did not have a constitutional right to keep his family history private"), rev'd on other grounds, 528 U.S. 141 (2000); Cooke v. U.S. Bureau of Prisons, 926 F. Supp. 2d 720, 736–38 (E.D.N.C. 2013) (noting the Fourth Circuit "has never held that an inmate has a constitutional right to privacy in medical treatment"); Sherman v. Jones, 258 F. Supp. 2d 440, 443 (E.D. Va. Apr. 22, 2003) (same). Furthermore, the circuit courts of appeals are split on the issue. Compare Doe v. Wigginton, 21 F.3d 733, 740 (6th Cir. 1994), with Powell v. Schriver, 175 F.3d 107, 109, 112 (2d Cir.1999). Given the lack of clearly established authority finding a pretrial detainee has a constitutional right to privacy in his medical records, the officer defendants are entitled to qualified immunity as to this claim. See Booker, 855 F.3d at 537–39.

Finally, to the extent plaintiff's claim is that the officer defendants "mocked" and "humiliated" him after learning about his HIV status, the claim is subject to summary dismissal. Verbal harassment, particularly the limited instances of it asserted by plaintiff, does not state a claim for violation of plaintiff's Fourteenth Amendment rights. See Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016); Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) (explaining "mere

threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983"); see also Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Barney v. Pulsipher, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998).

In sum, the officer defendants are entitled to qualified immunity on plaintiff's claims regarding disclosure of his private health information. The court also grants the officer defendants' motion to the extent plaintiff asserts a § 1983 claim based on verbal harassment. Finally, to the extent plaintiff seeks injunctive relief, the claim is moot because he is no longer incarcerated at the Bertie-Martin Regional Jail. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009). The court addresses plaintiff's claims against the officer defendants in their official capacities below.

2. Defendants Nussbaumer and Biggs

Defendants Nussbaumer and Biggs are employed by a private entity and thus arguably are not entitled to qualified immunity. See Perniciaro v. Lea, 901 F.3d 241, 251 (5th Cir. 2018) (discussing circuit split on the issue of whether private medical providers who provide medical services in prisons are entitled to qualified immunity).[2] The court therefore assumes without deciding that defendants Nussbaumer and Biggs cannot assert qualified immunity.

For purposes of deciding defendants Nussbaumer and Biggs motion, the court also assumes plaintiff has a constitutional right to privacy in his medical records, although as noted above this right is not clearly established. The Fourth Circuit has held that any "privacy interest" asserted by an inmate "must be weighed against the public interest in rehabilitation and in the security of prisons." Taylor v. Best, 746 F.2d 220, 225 (4th Cir. 1984); see also Hancock v. Cty. of Rensselaer, 882 F.3d 58, 68 (2d Cir. 2018) (discussing similar balancing test where inmate asserts violation of

---

[2] Neither the Supreme Court nor the Fourth Circuit have squarely addressed the issue. Defendants Nussbaumer and Biggs also do not address the issue in their briefing, despite asserting a qualified immunity defense.

his right to privacy in inmate medical records).

As set forth above, the only individuals that learned about plaintiff's HIV status were the jail's medical personnel and certain corrections officers who were personally involved in maintaining plaintiff's (and the other inmates') safety and security. Where the disclosure is limited to prison officials involved in direct inmate care, the "compelling public interests" in protecting the health of plaintiff and other inmates outweighs plaintiff's privacy interest in his HIV status. See Taylor, 746 F.2d at 225. As the United States Court of Appeals for the Seventh Circuit has cogently explained,

> [E]ven if a right of prisoners to the confidentiality of their medical records in general had been clearly established in 1992, it would not follow that a prisoner had a right to conceal his HIV status. There is a great difference, so far as the balance between privacy and public health is concerned, between a communicable and a noncommunicable disease. A person with a noncommunicable disease is a danger only to himself, and the compelled disclosure of his condition to others is unlikely to further a legitimate interest of the state. But a person with a communicable disease is a danger to others [thus justifying some disclosure to prison staff].

Anderson v. Romero, 72 F.3d 518, 524 (7th Cir. 1995). Accordingly, defendants Nussbaumer and Biggs did not violate plaintiff's right to privacy (assuming such right exists) with respect to their disclosure of plaintiff's HIV status to the officer defendants.

The court now turns to plaintiff's claim that defendant Nussbaumer violated his civil rights by posting a "sign-off sheet" on his door requesting that detention officers document his reports of "loose bowel movements." (Pl.'s Aff. (DE 88-1) ¶¶ 10-11). The "interest in privacy of medical information will vary with the condition" and therefore disclosure of minor, non-stigmatizing medical issues does not trigger strict constitutional scrutiny. See Powell, 175 F.3d at 111; Franklin

v. McCaughtry, 110 F. App'x 715, 719 (7th Cir. 2004).³ Instead, such disclosures can be sustained if they are reasonably related to a legitimate penological interest. Hancock, 882 F.3d at 66 n.3; Powell, 175 F.3d at .

Here, defendant Nussbaumer testified that she placed the sign-off sheet on plaintiff's cell in order to document plaintiff's intestinal distress over the weekend when other medical staff were not present. (Nussbaumer Aff. (DE 72-2) ¶ 9). The court finds such disclosure of a routine medical issue is reasonably related to defendants' interest in documenting plaintiff's ongoing health issues. Detention center officers are responsible for providing detainees with appropriate medical care, and therefore in some cases limited disclosure of a medical condition is necessary to achieve that goal. See Bell v. Wolfish, 441 U.S. 520, 537 (1979) (noting loss of privacy, even for pretrial detainees, is "an inherent incident[] of confinement"); Franklin, 110 F. App'x at 719 (noting some disclosure of medical conditions, particularly in a prison, is "commonplace"); Hancock, 882 F.3d at 66 (explaining [t]he strength of the individual interest in privacy adjusts how closely [the court should] scrutinize the government's offered justifications").

Finally, "general indiscretion" or negligent disclosure of an inmate's medical condition does not rise to the level of a constitutional violation. Compare Powell, 175 F.3d at 112 (holding that "gratuitous disclosure of an inmate's confidential medical information as humor or gossip . . . is not reasonably related to a legitimate penological interest."), with Franklin, 110 F. App'x at 719 (explaining "general indiscretion" in disclosing an inmate's medical condition to other inmates does not violate an inmate's privacy rights) and Cooke, 926 F. Supp. 2d at 737-38 (same). Plaintiff's evidence at most establishes negligent conduct in disclosing plaintiff's medical complaints to other

---

³ As set forth above, the Fourth Circuit has not addressed these issues in the context of a prisoner or pretrial detainee's right to privacy.

inmates, not a "gratuitous disclosure" as humor or gossip. See Powell, 175 F.3d at 112.

Accordingly, the court finds defendants Biggs and Nussbaumer did not violate plaintiff's (assumed) right to privacy. The court therefore grants defendant Nussbaumer and Biggs' motion for summary judgment.

    3.    Sheriff Defendants' Motion

The court now turns to the Sheriff defendants' motion for summary judgment.[4] As noted plaintiff did not respond to the Sheriff defendants' motion.

A plaintiff asserting a claim under § 1983 against defendants in their individual capacities must establish the defendants were personally responsible for the alleged constitutional violation. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018). The undisputed record evidence establishes that the Sheriff defendants were not personally involved in the alleged violations of plaintiff's privacy rights, and had no supervisory authority over (or other responsibility for) employees at the Bertie-Martin Regional Jail. (See Holley Decl. (DE 81-1); Manning Decl. (DE 81-2)). Accordingly, the court grants the Sheriff defendants' motion with respect to the individual capacity claims.

    4.    Official Capacity Claims

Plaintiff also asserts official capacity claims against all defendants. Claims against city officials in their official capacities are in all respects, for purposes of § 1983, "treated as suits against the municipality." Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469-70 (4th Cir.

---

[4] As the Sheriff defendants note, it is unclear whether plaintiff is attempting to bring this action against the Sheriffs themselves, or the Bertie and Martin County Sheriff's Offices. To the extent plaintiff's claims are against the sheriff offices, such entities not capable of being sued under § 1983. See Jilani v. Harrison, No. 5:15-CT-3271-FL, 2018 WL 1545584, at *10-11 (E.D.N.C. Mar. 29, 2018), aff'd, 732 F. App'x 208 (4th Cir. 2018); McCallister v. Lee, No. 7:13-CV-154-FL, 2014 WL 3700337, at *1 (E.D.N.C. July 24, 2014), aff'd, 585 F. App'x 56 (4th Cir. 2014).

2013).[5]  "[A] municipality is subject to Section 1983 liability only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" Id. (quoting Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978)).

"An official policy often refers to 'formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Semple v. City of Moundsville, 195 F.3d 708, 712-13 (4th Cir. 1999) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)).  "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.'" Edwards, 178 F.3d at 244-45 (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir.1987)).  In addition, municipal policy may include "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  By contrast, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Id. at 824.

---

[5]      The Sheriff defendants argue that because the Bertie-Martin Regional Jail is run by a commission independent of the Sheriff's office, plaintiff's official capacity claims against the Sheriff defendants must fail.  The court does not reach this argument where it plainly appears plaintiff has not established a viable official capacity claim regardless of whether he named the correct the defendant.

Plaintiff has not forecasted evidence to create a genuine issue of fact as to liability of defendants in their official capacities. To the extent plaintiff alleges cognizable constitutional violations, the isolated incidents described in plaintiff's affidavit and declaration are not sufficient to attribute the actions of the individual defendants to the county entities, and plaintiff does not identify any official county policy or custom that caused the alleged constitutional deprivations. See Connick, 563 U.S. at 61-63; Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003)

Finally, to the extent plaintiff's claim is that the jail policy requiring him to disclose his HIV status to prison officials in order to receive medical treatment violates his constitutional right to privacy or medical care, defendants have presented uncontradicted evidence that completion of the medical screening questionnaire is voluntary. (See Medical Screening Policy (DE 98) at 1-2). Plaintiff presents only an isolated incident of defendants Wesson, Jones, and Biggs violating this policy by stating he had to complete the form to receive medical treatment. As set forth above, an isolated incident of alleged unconstitutional conduct is not sufficient to establish municipal liability.

Accordingly, the court grants defendants' motions with respect to plaintiff's official capacity claims.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motions for summary judgment (DE 69, 75, 79). The clerk is DIRECTED to close this case and to amend the caption as reflected in footnote one.

SO ORDERED, this the 25th day of September, 2019.

LOUISE W. FLANAGAN
United States District Judge